IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACEY ABDUL REAVIS, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-1184 |
| | ) | Judge Joy Flowers Conti/ |
| COL. J.E. POSKA; CAPT. W.E. | ) | Chief Magistrate Judge Amy Reynolds Hay |
| LEGGETT, | ) | |
| Defendants | ) | Re Dkt. [17] |

## REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that Defendants' partial motion to dismiss, be granted in part and denied in part.  It should be denied as to the Eighth Amendment claim of excessive force against Captain Leggett and granted as to all other claims against all defendants.

II.      Report

**Relevant Procedural History**

Acey Abdul Reavis ("Plaintiff") is a state prisoner who has filed a civil rights complaint against two defendants, both of whom are Department of Corrections ("DOC") employees. Plaintiff complains about an alleged assault and related events that occurred on August 5, 2008, at SCI-Fayette, where he was incarcerated and where the two defendants were employed.   The two defendants are: (1)  Corrections Officer Poska, who is alleged to have assaulted Plaintiff and (2) Captain Leggett, who is alleged to have done nothing when Plaintiff was attacked.  The Defendants, both of whom are represented by the Attorney General's office, filed a partial

motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

The complete factual allegations of the complaint are as follows:

> CO Poska is continuely [sic] enforcing unconstitutional void DOC policies.  CO Poska is committing fraud, [and] treason by accepting and being paid with money not backed by gold or silver.  CO Poska attacked me while I was in handcuffs, jumped on my back, slammed my face in which I received a "hickey."  CO Poska took all of my property and would not give me any grievances once I asked for some to report the incident.  There are no policies mentioned in the Constitution of Pennsylvania and the DOC itself is not mentioned in the Constitution of Pennsylvania.  CO Poska is acting under color of state law.  Capt. Leggett is continuely [sic] enforcing unconstitutional void DOC policies.  Capt. Leggett is committing fraud, [and] treason by accepting and being paid with money not backed by gold or silver.  Capt. Leggett did nothing when I was attacked by CO Poska, [and] in fact, vowed to "cover it up" and he denied me any grievances, so I could not report the attack.  There are no policies mentioned in the Constitution of Pennsylvania and the DOC itself is not mentioned in the Constitution of Pennsylvania.  Capt. Leggett is acting under color of state law.

Dkt. [10] at 2, ¶ IV.C.  Plaintiff claims that the foregoing violates the following laws of the United State: "RICO, First Amendment U.S. Constitution, Fourth Amendment U.S. Constitution, Eighth Amendment U.S. Constitution, Article I Section 10: Gold clause U.S. Constitution, Acting Under Color of State law."  Id., at ¶ III.

Through the instant motion, Defendants seek dismissal of (1) all claims except for the Eighth Amendment excessive force claim against Defendant Poska, and (2) claims against Defendant Leggett, based upon the defense that Captain Leggett had no personal involvement in the sole claim that the Defendants concede states a claim, i.e., the alleged assault occurring on August 5, 2008.  Dkt. [17].   The defendants also filed a brief in support.  Dkt. [19].  Plaintiff was directed to file a response to the Defendants' motion to dismiss and he did so.  Dkt. [21].

**Standard of Review and the PLRA**

As the United States Supreme Court recently held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001), <u>amended by</u>, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (<u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, 550 U.S. at 554 (<u>quoting</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint,

which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Twombly, 550 U.S. at 555-556.  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In addition, because Plaintiff was a prisoner at the time of the filing of this civil action,[1] and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA"), found at 28 U.S.C. § 1915A, apply herein.  In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit.   In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply.  The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may

---

[1]   See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.");  Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether he is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions

of the PLRA.  See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June

21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

**Discussion**

Defendants contend that Plaintiff's RICO claim fails to state a claim upon which relief

can be granted.

In order to state a RICO claim, a plaintiff has two pleading burdens:

[f]irst, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 . .
., the substantive RICO statute.   Specifically, it must be alleged:  (1) that the
defendant (2) through the commission of two or more acts (3) constituting a
'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or
maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of
which affect interstate or foreign commerce.  18 U.S.C. S 1962(a)-(c) (1976).
Moss, 719 F.2d at 17.   The plaintiff's second 'pleading burden' is to allege that he
was ' injured in his business or property by reason of a violation of section 1962.'
Id. (quoting 18 U.S.C. § 1964(c)).

Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990). See also Lighting

Lube, Inc. v. Witco Group, Inc., 4 F.3d 1153, 1187 (3d Cir. 1993)("In order to recover under

section 1964(c) a plaintiff must plead (1) a  section 1962 violation and (2) an injury to business

or property by reason of such violation.").

After listing the pleading requirements for a successful RICO claim, Dkt. [19] at 4, the

Defendants pointed out in their motion to dismiss that Plaintiff "has failed to allege anything

closely resembling a private claim for damages under RICO." Id.  Despite being on notice of

what he needed to plead for a successful RICO claim, Plaintiff did not address the deficiency

noted by the Defendants in his response to the motion to dismiss.

In light of the parties' arguments, we conclude that Plaintiff's RICO claim fails to state a claim upon which relief can be granted.  While it is true that Plaintiff alleged that his property had been taken from him, it appears that what happened was that Plaintiff was placed in a strip cell after the alleged assault, see Dkt. 21 at 2, ¶ 11 (recounting that Plaintiff was placed into a "security cage where I was sprayed and strip[p]ed free of all my clothing").  However, we need not speculate as to what happened because merely being deprived of one's property is not the same as alleging an injury to property, such as its destruction or diminution in value.  The rule is that "injuries to property are not actionable under RICO unless they result in tangible financial loss to the plaintiff[.]" Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000)(citing Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)); Maio, 221 F.3d at 484 ("section 1964(c) 'requires a showing of some actual, out-of-pocket financial loss'")(quoting Dornberger v. Metropolitan Life Ins. Co., 961 F.Supp. 506, 521 (S.D.N.Y.1997)).  See also Guerrero v. Gates, 442 F.3d 697, 707 (9th Cir. 2006) ("To recover under RICO, the individual 'must show proof of concrete financial loss' and must demonstrate that the loss was proximately caused by the racketeering activity.")(footnote omitted).  Instantly, Plaintiff has failed to allege any tangible financial loss to himself and indeed, it is hard to imagine any such out-of-pocket tangible financial loss, given that Plaintiff indicated that this alleged assault occurred while he was in the Restricted Housing Unit ("RHU").  Dkt. [10] at 2, ¶ IV.B. (indicating place of the event was the "Restricted Housing Unit of SCI-Fayette").  The Court notes that prisoners are permitted only very limited property while in the Restricted Housing Unit if they are in the RHU under Administrative Custody.  See, e.g., DC-ADM 802, Sec. 3.A.1.c. ("any combination of personal property that will fit into one standard-size records-center box may be maintained in the

cell. Personal property includes commissary, prescribed medication, and written materials in accordance with DC-ADM 803, "Inmate Mail and Incoming Publications").[2]  Indeed, if a prisoner is under Disciplinary Custody ("DC"), the prisoner is entitled to no personal property in the RHU for the DOC rules provide that a DC status inmate in the RHU "shall not have the privileges of radio, television, telephone calls, personal property (except toilet articles, written materials, and prescribed medications)."   DC-ADM 801, Sec. 6.A.3.

In light of the foregoing, Plaintiff has simply failed to state a RICO claim because he has failed to make sufficient "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  Accordingly, the RICO claim should be dismissed.

We next take up Plaintiff's First Amendment "claim."  We find that the complaint simply fails to allege sufficient facts to make out any First Amendment claim.  The Defendants similarly noted that Plaintiff's First Amendment claim was unclear and speculated that Plaintiff was attempting to mount a First Amendment right of access to courts claim by noting that Plaintiff complained the Defendants denied him grievances upon his request.  Dkt. [19] at 4 to 5. However, such a claim would be futile.  The rule is that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the

---

[2]  These DOC policies under DC-ADM 801 and 802 are available at

http://www.cor.state.pa.us/portal/server.pt/community/department_of_corrections/4604/doc_policies/612830

(Site last visited on 5/4/2010).

prison's refusal to entertain his grievance." Cole v. Mistick, NO. CIV.A. 05-1476, 2009 WL

1160962, at *2 (W.D.Pa. April 28, 2009) (quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir.

1991) (per curiam)). Nor is the alleged refusal by the Defendants to provide Plaintiff with

grievance forms otherwise violative of his First Amendment rights. See Rivera v. Pennsylvania

Dept. of Corrections, 346 F.App'x 749, 751 (3d Cir. 2009) ("a prisoner has no constitutional

right to a grievance procedure")(citing Flick v. Alba); Caldwell v. Beard, 324 F.App'x 186, 189

(3d Cir. 2009) ("The District Court correctly noted that an inmate has no constitutional right to a

grievance procedure."); Myron v. Terhune, 225 F.App'x 434, 438 (9th Cir. 2007)("there is no

constitutional right to an effective prison grievance system"); Cancel v. Goord, No. 00 Civ.2042,

2001 WL 303713, at *3 (S.D.N.Y. March 29, 2001) ("the refusal to process an inmate's

grievance or failure to see to it that grievances are properly processed does not create a claim

under § 1983"). Hence, we find that Plaintiff's complaint utterly fails to state a First Amendment

claim.

        In the alternative, even if there were some right to file a grievance, the Defendants note

that Plaintiff's complaint reveals that he was able to file a grievance concerning the alleged

assault a week after the alleged assault. Dkt. [19] at 5, citing Dkt. [10] at 3, ¶ V.C ("I filed a

grievance a week later."). Thus, any interference with his putative "right to file a grievance"

earlier resulted in no harm to Plaintiff and so we conclude, "no harm, no foul." Cf. Burt v.

Walker, No. 07 C 4284, 2008 WL 4874133, at *4 & *8 (N.D.Ill., July 14, 2008)("'No harm, no

foul' is a maxim of the law of torts (in legal rather than sports lingo: there is no tort without

injury)" . . . . . "a plaintiff claiming denial of access to the courts must show 'actual injury'-that

is, that a state actor hindered the plaintiff's efforts to pursue a nonfrivolous legal claim. Even

under basic notice pleading, an inmate claiming a denial of access to the courts must specifically allege how the denial prejudiced him.")(citations omitted).  In order to be successful on a right of access to courts claim, a plaintiff must plead that he lost an opportunity to file a case in court and he could not subsequently file that case after the interference with the right of access to the court ceased.  Christopher v. Harbury, 536 U.S. 403 (2002).[3]  Since that is so, then, *a fortiori*, Plaintiff herein, must specifically plead how the Defendants' alleged interference with his filing a grievance caused him to lose the opportunity to file a grievance at all concerning these events, something that Plaintiff cannot do given his admission that he did file a grievance a week after the alleged assault.  Hence, Plaintiff's putative First Amendment claim must be dismissed for failure to state a claim upon which relief can be granted.

Next, we take up the Fourth Amendment claim.  The Fourth Amendment provides that

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[3] The Supreme Court in Christopher declared that the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong . . . .  the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court."  Christopher, 536 U.S. at 414-15.  Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim."  Id. at 415.  In addition, the court explained that as part of the pleading requirement to demonstrate actual injury caused by the official actions, the plaintiff must plead that she has actually lost the opportunity to litigate that which she desired to litigate in the suit which was blocked by the official action.  The Court explained that "the complaint must identify a remedy that may be awarded as recompense [for the blocked suit] but not otherwise available in some suit that may yet be brought."  Id.  In other words, if the claims in the blocked suit may yet be brought, there is no sense in litigating an access to courts claim because no actual injury was suffered if the claims in the blocked suit could still be brought.  As the Supreme Court put it so succinctly, "[t]here is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial of access element."  Id.

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.  It is not clear what Plaintiff's Fourth Amendment claim is.  The Defendants take Plaintiff's Fourth Amendment claim to be based on the facts that the Defendants allegedly took all of Plaintiff's property, or, in other words, "seized" his property within the meaning of the Fourth Amendment.  Dkt. [19] at 5 to 6.  Plaintiff did not object to this characterization in his response nor did he otherwise clarify the basis of his Fourth Amendment claim.  We agree with the Defendants that their characterization of Plaintiff's claim is the most plausible.   Hence, we understand Plaintiff's Fourth Amendment claim to be that the Defendants violated his Fourth Amendment rights by the seizure of all of his property.   Nevertheless, such a claim fails as a matter of law.

The "Fourth Amendment protects against unreasonable searches and seizures." United States v. Charles, 29 F.App'x 892, 896 (3d Cir. 2002)(internal quotations omitted).  However, the protections of the Fourth Amendment with respect to searches and seizures of a prisoner's "property" simply do not apply in the prison context.  Doe v. Delie,  257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); Jones v. Arpaio, 194 F.3d 1317 (Table, text available on Westlaw) (unpublished) (9th Cir. 1999) ("Finally, there is no merit to Valandingham's contention that jail officials violated his constitutional rights when they failed to return documents, correspondence, and postage seized following a search of his cell. Valandingham presented no evidence that the challenged conduct was unconstitutional per se, *see Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) (holding that Fourth Amendment's prohibition against unreasonable seizures does not apply in prison) . . . .").  Indeed, what the

10

Court held in <u>Taylor v. Knapp</u>, 871 F.2d 803 (9th Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 868 (1989), is equally applicable here.  In <u>Taylor</u>, the prison authorities were accused of seizing the property of a prisoner and the property of a non-profit corporation of which the prisoner plaintiff was an officer.  The plaintiff even alleged that the prison authorities had converted the property to their own use.  The plaintiff alleged that the deprivation of his property and of the corporation's property violated their fourth amendment rights.  The Court in <u>Taylor</u> rejected this claim, holding that the Fourth Amendment provided no protections against such deprivations.  The <u>Taylor</u> Court held that

> Taylor can make no fourth amendment claim, either on his own behalf or on behalf of the nonprofit corporation he wishes to represent.
>
> Lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens. *Hudson, supra*, 468 U.S. at 524, 104 S.Ct. at 3199; *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974). An inmate's fourth amendment rights are among the rights subject to curtailment. In particular, the fourth amendment does not protect an inmate from the seizure and destruction of his property. *Hudson, supra*, 468 U.S. at 528 n. 8, 104 S.Ct. at 2808 n. 8. Hence it cannot protect an inmate from the conversion of his property. *See id.* at 537-40, 104 S.Ct. at 3205- 07 (O'Connor, J, concurring) (because prison officials are authorized indefinitely to dispossess inmates of their property, what happens to the property while in official custody is not a Fourth Amendment concern). This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments. *Id.* at 540, 104 S.Ct. at 3207.

<u>Id.</u> at 806.  Likewise here, Plaintiff has no Fourth Amendment claim against the Defendants' actions in confiscating his property.[4]

---

[4]  It is also possible that Plaintiff is complaining of the alleged use of excessive force by Defendant Pozko in "assaulting" Plaintiff.  We are all familiar with the Fourth Amendment claim of the alleged use of excessive force by police officers in the course of conducting an arrest.  However, as a State prisoner who is serving a sentence post conviction, Plaintiff has no Fourth Amendment claim of excessive force, rather, he only has a claim under the Eighth Amendment.  <u>Bonilla v. Jaronczyk</u>, 354 F.App'x 579 (2nd Cir. 2009)("While claims of excessive force 'in the course of an

(continued...)

This is not to say that a prisoner is devoid of all protections.  See, e.g., Taylor, 871 F.2d at 806 ("This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments[,]" i.e. a due process claim). Although Plaintiff does not invoke the Fourteenth Amendment, a liberal reading of Plaintiff's pro se complaint could reasonably give rise to a procedural due process claim, i.e., the Defendants deprived Plaintiff of his property under the Fourteenth Amendment without procedural due process.  Plaintiff however, cannot state a claim of deprivation of property without due process because such claims are barred by Hudson v. Palmer, 468 U.S. 517 (1984).

Under Hudson v. Palmer, the Supreme Court held that an intentional deprivation of property by a state actor does not violate the plaintiff's procedural due process rights so long as there is a meaningful post-deprivation remedy.  Hudson v. Palmer, 468 U.S. at 533. The federal Courts of Pennsylvania have recognized that **both** the Department of Corrections' internal grievance procedure **and** the availability of a state tort suit in state court provide adequate post deprivation remedies so as to satisfy due process requirements under Hudson v. Palmer.  See, e.g., Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Mrs. Brown, No. Civ. A. 95-7867, 1996 WL 608473, at *2 (E.D. Pa. Oct. 24, 1996) (tort suit in state court

---

[4](...continued)
arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment,' *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), post-conviction excessive force claims, such as Bonilla's, are properly considered under the Eighth Amendment, *see id.* n. 10, 109 S.Ct. 1865 ('After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.'"), cert. denied___ S.Ct. __, (May 3, 2010)(No. 09-9336).

12

provides adequate post deprivation remedy for deprivation of legal papers); <u>Payton v. Horn</u>, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999)(same), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002).

Plaintiff herein had available to him the post deprivation remedies of both the DOC grievance procedures and a state tort action for conversion of property.  <u>See</u> 42 Pa.C.S.A. § 5524(7)(imposing a two-year limitation period for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct ...").  Hence, Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without due process.  <u>Payton v. Horn</u>, 49 F. Supp.2d at 795 ("Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.")(citations omitted); <u>Reid v. Seville</u>, No. CIV. A. 96-2577, 1996 WL 421901, at *3 (E.D. Pa. July 19, 1996)(same).  Accordingly, any putative procedural due process claim likewise fails.

Next, we consider Plaintiff's invocation of Article I, Section 10, clause 1 of the United States Constitution which provides that "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." Plaintiff's claim seems to be that the paper money and/or checks with which the Defendants are

paid are illegal or unconstitutional.[5]  Plaintiff is simply wrong; payment in such forms is neither illegal nor unconstitutional.   See, e.g., Jiramoree v. HomEq Servicing, No. CV 08-07511, 2009 WL 605817, at *1 - *2 (C.D.Cal. March 9, 2009)("Here, Jiramoree bases all of his claims on the premise that Defendants acted unlawfully by funding his loan by checks or wire transfers not backed by redeemable gold or silver coins in violation of Article I, § 10, Clause 1 of the U.S. Constitution. . . .  Because Jiramoree's constitutional claim of 'unlawful' money, which is the basis of all of his claims, has no merit, he fails to state a claim upon which relief can be granted.").  See also Foret v. Wilson, 725 F.2d 254, 254-55 (5th Cir. 1984) ("[The] argument, that only gold and silver coin may be constituted legal tender by the United States, is hopeless and frivolous, having been rejected finally by the United States Supreme Court one hundred years ago.") (citing Juilliard v. Greenman, 110 U.S. 421 (1884)).[6]

Lastly, we take up the Defendants' argument that all claims must be dismissed against Defendant Leggett including the Eighth Amendment excessive force claim.  Given the analysis above, Defendant Leggett, would be entitled to have all the above claims dismissed against him. The Defendants also seek to have the Eighth Amendment excessive force claim dismissed as against Defendant Leggett, because they contend that Plaintiff failed to plead that Defendant Leggett was personally involved in the alleged assault.  Dkt. [19] at 7 to 8.[7]  Specifically,

---

[5]  The significance of such to Plaintiff escapes the Court.

[6]  To the extent that the Defendants did not raise any defense to the "gold clause" claim, the Court may dismiss the claim sua sponte pursuant to the screening provisions of the PLRA.  Lopez v. Smith, 203 F.3d at 1126 n.6; Dare v. U.S., 2007 WL 1811198, at *4.

[7]  The Defendants do not seek to have the excessive force claim against Defendant Poska dismissed for failure to state a claim.

14

Defendants argue that "Plaintiff does not alleged that Captain Leggett, a supervisor, was involved in the alleged use of force.  Instead the allegations of the complaint make it clear that he only learned about the alleged use of excessive force after the fact."  Id.    However, Plaintiff alleged in the complaint that " Capt. Leggett did nothing when I was attacked by CO Poska, in fact he vowed to 'cover it up,' and he denied me any grievances, so I could not report the attack."  Dkt. [10] at 2, ¶ IV.C.  While the Defendants' construction of the complaint is possible, one could also read the complaint as claiming that Capt. Leggett did witness the alleged attack by Defendant Poska, and did nothing to intervene.   Such an interpretation appears to be supported when Plaintiff states in his response that "Capt. Leggett order[ed] unidentified C/Os to dragg [sic] me into a security cage where I was sprayed and strip[p]ed free of all my clothing . . . and a medical nurse took pictures of all my lumps and blood from my eye and face."  Dkt. [21] at 2, ¶ 11. This action by Defendant Leggett appeared to have happened nearly contemporaneously with the alleged assault by Defendant Poska and could indicate that Defendant Leggett was present at the alleged attack by Defendant Poska.   While Plaintiff could have been clearer as to whether Defendant Leggett was present at the time of the attack or not, unlike the Defendants, we cannot conclude from the complaint and the response that Defendant Leggett was not present for the alleged assault by Defendant Poska.  Accordingly, we recommend denying the partial motion to dismiss insofar as it seeks to have the Eighth Amendment excessive force claim dismissed as against Defendant Leggett.

III.    Conclusion

Pursuant to the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the

schedule established in the docket entry reflecting the filing of this Report and Recommendation, a copy of which docket entry is being mailed to Plaintiff along with the Report.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 7 May, 2010

cc:     The Honorable Joy Flowers Conti
        United States District Judge

        Acey Abdul Reavis
        FZ-6259
        SCI Fayette
        Box 9999
        LaBelle, PA 15450-0999

        Counsel of Record via CM-ECF